CLYDE A. THOMPSON and MARJORIE THOMPSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Thompson v. Commissioner
Docket No. 8167-77.
United States Tax Court
T.C. Memo 1979-505; 1979 Tax Ct. Memo LEXIS 21; 39 T.C.M. (CCH) 728; T.C.M. (RIA) 79505; December 17, 1979, Filed Ray A. Dunn and Charles J. Wilson, for the petitioners. David W. Johnson, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION
SCOTT, Judge: Respondent determined deficiencies in petitioners' Federal income tax for the taxable years 1972, 1973, 1974 and 1975 in the amounts of $1,538.11, $381.73, $7,356.07 and $5,532.58, respectively. Petitioners have conceded certain issues raised by the pleadings, leaving for decision only whether the amounts paid by petitioners in 1972, 1973, 1974 and 1975 relating to hunting leases are ordinary and necessary business expenses within the meaning of section 162na), I.R.C. 1954, [1] and, if they are, have these expenses been substantiated in accordance with the requirements of section 274. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, Clyde *23 A. and Marjorie Thompson, husband and wife, who resided in Houston, Texas, at the time of filing their petition in this case, filed joint Federal income tax retuns for the calendar years 1972, 1973, 1974 and 1975 with the Director of the Internal Revenue Service Center, Austin, Texas. Mr. Thompson (hereinafter petitioner) has been self-employed since 1946 when he first established C. A. Thompson Engineers-Surveyors, a sole proprietorship located in Houston, Texas. Since around 1968, petitioner has not devoted his full energies to C.A. Thompson Engineers-Surveyors.From 1971, Mr. Clifford C. Seegar has been the general manager of the proprietorship in charge of the day-to-day operations of the enterprise. C. A. Thompson Engineers-Surveyors has contracts with a number of businesses that regularly use engineering services. These contracts are nonexclusive.In a given year, petitioner's firm might supply none or as much as 50 percent of a client's surveying and engineering needs. The contracts remain in effect from year-to-year except that beginning about January 1 of each year the rates to be charged for the engineering and surveying services are renegotiated with each client. *24 In each of the years here in issue, petitioner sponsored an antelope hunt some time in October and a nule deer hunt beginning the Friday or Saturday after Thanksgiving. Petitioner attended the mule deer hunt in each of the years 1972, 1973 and 1975. Petitioner did not attend the antelope hunt in any of the years here in issue and did not attend the mule deer hunt in 1974. The hunts took place on the Livingston ranch in Presidio County, Texas. Mr. Seegar attended all of the hunts during the years in issue. Petitioner never hunted. When he attended a hunt he would drive some of the quests to the ranch, and when he arrived at the hunting site he performed such functions as the dishwashing and cooking for the hunting party. Mr. Seegar, on the other hand, did hunt and often succeeded in killing an antelope or mule deer during a hunt. The Livingston ranch was approximately 600 miles from Houston. Some of the guests on the hunt drove up in their own automobiles. Mr. Seegar drove some of the guests to the hunting site for each of the hunts. When petitioner went on the mule deer hunts he drove Mr. J. C. Faulkner and Mr. Carl Blue in his car to the ranch. [2] Both Mr. Faulkner and *25 Mr. Blue were connected with Texas Eastern. Sometimes on the drive to and from the ranch petitioner would mention the new equipment his business had available, the personnel and crews available and work that might be coming up. No specifics were discussed with respect to rates. Mr. Seegar, on the way to and from the hunts, at some time mentioned the same items to Mr. Faulkner and Mr. Dick (R.E.) Davis, but no other persons. In addition to Mr. Faulkner, Mr. Blue, Mr. Dodd, Mr. Strong and Mr. Davis, Messrs. Patton, Stone, Kline, Chambers, Green, Young, Hardwick, Magee, Moe, Butler and Church (all of Texas Eastern), Messrs. Sommers, Kergosien and Jones (all of Coastal States), and Mr. Haymond of Sundance Oil and Mr. Morgan of Transocean Oil attended some of the hunts. After the hunting party arrived at the ranch, there were no business discussions of any type during their stay. Texas Eastern was one of petitioner's best clients. Sometimes Mr. Faulkner would call petitioner to suggest persons to be invited on the hunts. *26 In the years 1972 through 1975, petitioners paid the following amounts incident to the expenses of the mule deer and antelope hunts on the Livingston ranch: 1972
1973
1974
1975
Cost of lease
$3,308.00
$4,901.45
$5,535.00
$7,075.00
Meat
250.00
250.00
250.00
250.00
Liquor
300.00
300.00
300.00
300.00
Food
250.00
250.00
316.70
452.57
Hunting Licenses
225.00
Total
$4,108.00
$5,701.45
$6,401.70
$8,302.57
Contemporaneous records of the names of the guests on the hunting trips, the date that they went hunting or he companies they might have represented were not kept by petitioners or their employees. [3] Petitioners, on the Schedules C attached to their 1972, 1973, 1974 and 1975 Federal income tax returns, claimed as entertainment expenses amounts including the $4,108, $5,701.45, $6,401.70 and $8,302.57, respectively, spent in connection with the mule deer and antelope hunts in those years. Respondent in his notice of deficiency disallowed these deductions with the following explanation: *27 (b) The deduction claimed for expenses of a hunting lease of $4,108.00, $5,701.45, $6,401.70, and $8,302.57 for tax years 1972, 1973, 1974 and 1975, respectively, is not allowable because it has not been established that such amount represents an ordinary and necessary business expense, or was expended for the purpose designated or was substantiated within the meaning of section 274 of the Internal Revenue Code. Accordingly, your taxable income for 1972, 1973, 1974 and 1975 is increased $4,108.00, $5,701.45, $6,401.70 and $8,302.57, respectively. OPINION Respondent takes the position that petitioners have failed to show that the amounts expended for the autelope and mule deer hunts each year constituted ordinary and necessary business expenses within the meaning of section 162(a). Respondent further argues that even if the amounts should be considered business expenses under section 162(a) petitioners had failed to comply with the provisions of section 274, and for that reason the claimed deductions should not be allowed. The record shows that in the fall of each year petitioner sponsored an antelope hunt and starting the Saturday after Thanksgiving *28 each year petitioner sponsored a mule deer hunt. Mr. Seegar, the general manager of petitioner's sold proprietorship, attended all hunts during the years here in issue. Petitioner attended the mule deer hunts in 1972, 1973 and 1975, but attended none of the antelope hunts in any of the years here in issue. Generally, the people invited on the hunts were representatives of the best customers of petitioner's surveying business. However, when Mr. Seegar would talk to Mr. Livingston, the owner of the ranch on which the hunts were conducted, about July of each year, he would give a commitment to Mr. Livingston of the number of people he intended to bring hunting. Even if he took less people, he was required to pay for the number committed.Therefore, occasionally when someone called at the last some other person would be substituted. Some of the people who went on the hunts would drive themselves to the ranch area and others would be driven by petitioner or Mr. Seegar up to the ranch area. Both petitioner and Mr. Seegar were of the opinion that other surveying and engineering firms sponsored hunts or fishing trips for their clients as a goodwill gesture. The evidence in this record, *29 as a whole, clearly indicates that the hunting trips were not personal outings for petitioner or his family or for Mr. Seegar, but rather were planned to provided entertainment for representatives of goods clients of petitioner's engineering and surveying business. From the evidence as a whole, it appears that the trips were planned in order to entertain individuals who were officers or employees of clients of petitoner's business. As such they were intended, as stated by both petitioner in his testimony and Mrs. Bennett, petitioner's daughter and the bookkeeper of petitioner's business, in her testimony, for the purpose of creating goodwill with a view toward increasing the business of petitioner's engineering and surveying operation. In this sense, the hunting trips were certainly useful and helpful in petitioner's business. Considering this record as a whole, we conclude that the costs of the hunting trips were business expenses within the meaning of section 162. However, having concluded that the hunting trips were helpful and useful to petitioner's business and therefore business expenses within the definition of section 162, it is clear that petitioner must comply with *30 the provisions of section 274 in order to be entitled to the deductions claimed.The record is clear that the hunting trips were entertainment within the meaning of section 274 and petitioners do not contend to the contrary. Amounts expended for entertainment are not deductible because of the provisions of section 274[4] unless the taxpayer establishes that "the item was directly related" to the active conduct of his trade or business or, in the case of an item directly preceding or following a "bona fide business discussion," such item was associated with the active conduct of the taxpayer's business. Furthermore, under the provisions of section 274(d) no deduction which would otherwise be allowable under section 274 for an item of entertainment shall be allowed unless a taxpayer establishes by adequate records or by sufficient evidence corroborating his own statement (1) the amount of the expense, (2) the time and place of the entertainment, (3) the business purpose of the expense, and (4) the business relationship to the taxpayer of the persons entertained. Detailed regulations have been *31 issued setting forth the requirements necessary for a taxpayer to establish these four items and these regulations have been upheld in numerous cases. See Andress v. Commissioner,51 T.C. 863 (1969), affd. 423 F.2d 679 (5th Cir. 1970). *32 Except as to the amounts of the expenses incurred, petitioner does not contend that he maintained records with respect to the hunts.[5] Petitioner maintained no record of the times of the hunts, and the only record with respect to the place of the hunts was that they took place on the Livingston ranch as indicated by the fee for the hunts paid to the Livingston ranch. No record was maintained of the business purpose of the hunts or of the names of the individuals who went on the hunts.[6]Petitioner attempted to satisfy the evidentiary requirements of the time and place of the hunts, the business purpose of the hunts, and the persons attending the hunts by his oral testimony and the oral testimony of Mr. Seegar.Mr. Seegar, at the trial, was unable to testify as to the individuals that had attended the hunts because of a loss of memory occasioned by a recent illness. However, in 1976, before his illness, he had prepared a list of the persons attending the hunts during the period 1972 through 1975 and he testified that he knew the list was accurate when prepared. In 1976, Mr. Seegar had been unable to recall in all instances who attended which hunts. He had called some of the persons *33 who attended some of the hunts to ask them which hunts they attended and in which years. None of the persons who attended any of the hunts was called as a witness at the trial. Petitioner in his testimony could remember the names of only a few of the persons who attended the hunts. *34 On the basis of this record, we conclude that petitioner has failed to show by any business records or any corroborated oral testimony the time and place of the hunts that each person who went on the hunts attended. Also, there is no corroboration of Mr. Seegar's testimony as to most of the persons attending the hunts and their relationship to petitioner's engineering and surveying business. The evidence also fails to show, as required by section 274 and the regulations issued pursuant thereto, that the hunts were directly related to or associated with petitioner's trade or business. Both petitioner and Mr. Seegar testified as to the business purpose of the hunts. However, their testimony was not precise and, considered as a whole, amounted to nothing more than that the hunts were held to maintain or engender goodwill with clients of petitioner's engineering and surveying business. The evidence fails to show the information required by section 1.274-2(c)(2) and (3), Income Tax Regs., [7] necessary to establish that the hunts were directly related to petitioner's business. In order to *35 establish that entertainment is directly related to the active conduct of a taxpayer's trade or business, section 1.274-2(c)(3), Income Tax Regs., requires that it be shown that at the time the taxpayer made the entertainment expenditure he had more than a general expectation of deriving some income from the expenditure and that he had some expectation of a specific trade or business benefit other than the goodwill of the person entertained. It is also necessary that the taxpayer show that during the entertainment period he actively engaged in business meetings, discussions, or negotiations and that the principal character or aspect of the combined business or entertainment to which the expenditure related was the active conduct of the taxpayer's trade or business. Under the facts here, we consider it clear that petitioner has totally failed to substantiate that the expenditures for the hunts were directly related to the active conduct of the engineering and surveying business. *36 The record shows that during the course of the audit petitioner told the revenue agent that business was not discussed on the hunts since that was not the purpose of the hunts. At the trial, both petitioner and Mr. Seegar testified that no business discussions took place during the actual hunts. However, they both testified in a general way to some discussions while driving to and from the hunts with respect to the business of petitioner's engineering and surveying operations. Petitioner testified that sometimes on the drive to or from the ranch, which took 12 to 13 hours, he would discuss with Mr. Faulkner the progress being made on the Houston Center, the use of new types of electronic equipment on the Houston Center project, and personal problems both in petitioner's engineering and surveying business and in the business of the client company. He was not specific as to when any of these discussions took place and with respect to other items that might have been discussed stated that probably they discussed the amount of work the client might have in the future and the possibility of rate changes. He made it clear that no specifics as to rate changes were discussed since negotiations *37 for the rate changes of the engineering company always took place in January. It was at that time that the specifics of the rate changes were discussed. Mr. Seegar was even less definite in his testimony with respect to any discussions bordering on business that might have been carried on during the automobile trips to and from the Livingston ranch. In fact, the record does not even show who road in the car with Mr. Seegar to the ranch, although petitioner did testify as to the persons he drive to the three of eight or more hunts which he attended. Mr. Seegar could think of only two persons with whom he had any discussions on the drives to and from the hunts. One of those persons was one of the persons petitioner stated he always drove to the hunts. There is no indication in the record that this individual, Mr. Faulkner, went to the hunts that petitioner did not attend. The testimony of petitioner and Mr. Seegar clearly shows that the discussions they had while driving to and from the hunts were only general conversations of men interested in the same area of work. These discussions were not active business meetings, negotiations, discussions or transactions for the purposes *38 of obtaining income or other specific business benefits. No discussions are shown to have been carried on going to and from some of the hunts and no discussions are shown to have been carried on with most of the participants in the hunts. However, under section 274 a deduction for an expenditure for entertainment may be allowed not only if it is directly related to the taxpayer's business but also if it is associated with the actual conduct of that business. Section 1.274-2(d), Income Tax Regs., deals with the showing necessary for an item to be considered as "associated entertainment." [8] In order to qualify under this section, the entertainment must be shown to have directly preceded or followed a substantial bona fide business meeting or discussion. Section 1.274-2(d)(3) of the Regulations states that a "substantial and bona fide business discussion" depends upon the facts and circumstances of each case, but that it must be established that the "taxpayer actively engaged in a business meeting, negotiation, discussion, or other bona fide business transaction, *39 other than entertainment, for the purpose of obtaining income or other specific trade or business benefit." This regulation also provides that in addition it must be established "that such a business meeting, negotiation, discussion, or transaction was substantial in relation to the entertainment." *40 In our view, petitioner has totally failed to show compliance with the requirements of this regulation. There is no testimony of any business discussions with most of the participants in the hunts and no showing of any substantial business discussions with any of the participants. Considering the testimony of petitioner and Mr. Seegar, it is clear that, as petitioner told the revenue agent during the course of his investigation of petitioners' tax liabilities, the purpose of the hunts was not to discuss business. Clearly, the purpose of the hunts was to entertain clients of petitioners in a way which would engender goodwill. While it may be that on the long drives to and from the ranch some mention might occasionally have been made by petitioner or by Mr. Seegar or by a representative of one of the clients of some new equipment which petitioner had or the amount of engineering work that might come up in the future in some area, any such discussions were clearly incidental to the entertainment aspects of the hunts. Both petitioner and Mr. Seegar specifically testified that no business discussions took place during the hunts. Also, the record is clear that not all the persons who *41 went on the hunts were driven to and from the hunts by either petitioner or Mr. Seegar and, as previously stated, the record does not show which individuals Mr. Seegar drove to and from the hunts. In one year, petitioner did not go on any of the hunts and in no year here involved did he go on the antelope hunts. The generalized testimony with respect to possible business discussions that might have incidentally taken place on the trips to and from the ranch in no way meets the requirements of section 1.274-(d) of the Income Tax Regulations.
It is also apparent from the record that the testimony of petitioner is in no way corroborated by Mr. Seegar's testimony, nor is Mr. Seegar's testimony corroborated by petitioner's testimony as to any of the elements necessary for deductions for entertainment expenses to be allowed under section 274. Establishment of the elements listed in section 274 is necessary for deductions for entertainment expenses to be allowable. Dowell v. United States,522 F.2d 708 (5th Cir. 1975); Rutz v. Commissioner,66 T.C. 879, 885 (1976). Considering this record as a whole, we conclude that petitioners have failed to establish *42 by adequate records or any other precise evidence the elements required by section 274 and the Regulations issued pursuant thereto for deductions for the expenses of the antelope and mule deer hunts to be allowable. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years involved.↩
2. Petitioner testified that he "personally took Mr. J. C. Faulkner, and Mr. Blue, Mr. W. W. Strong and Kenneth Dodd" to the hunts. However, other evidence in the record indicates that the only deer hunts which Mr. Kenneth Dodd (a draftsman with Texas Eastern) attended were the 1973 and 1975 hunts and the only deer hunts Mr. W. W. Strong (a survey supervisor with Costal States) attended were in 1974, when petitioner did not go, and in 1975.↩
3. The owner of the Livingston ranch kept records of everyone that hunted on his ranch and turned them in to the State Wildlife Service. When the Wildlife Service Returned these books to the owner, he destroyed them.↩
4. Sec. 274(a)(1) provides: (a) Entertainment, Amusement, or Recreation.-- (1) In General.--No deduction otherwise allowable under this chapter shall be allowed for any item-- (A) Activity.--With respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, unless the taxpayer establishes that the item was directly related to, or, in the case of an item directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), that such item was associated with, the active conduct of the taxpayer's trade or business, or * * *
and such deduction shall in no event exceed the portion of such item directly related to, or in the case of an item described in subparagraph (A) directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), the portion of such item associated with, the active conduct of the taxpayer's trade or business.↩
5. Respondent on brief contends that adequate records under the requirements of section 274(d)↩ were not maintained to show the expenses actually incurred on the hunts. However, respondent stipulated the amounts of expenses incurred and paid on the hunts on the basis of the examination of petitioner's books by a revenue agent. Based on the stipulated facts and the testimony of respondent's agent, we conclude that petitioner did in fact have adequate records to show the amounts of the expenses. 6. Because of the requirements of the State Wildlife Service, Mr. Livingston maintained a register of the persons attending the hunts. However, the record shows that after he furnished this record each year to the State Wildlife Service the record was returned to him and destroyed by him. This record was kpet by Mr. Livingston for his own purposes as the owner of the ranch in compliance with the State regulations. In no way were Mr. Livingston's records books or records of petitioner. Had these records been available at the trial, they may or may not have corroborated Mr. Seegar's testimony as to who attended the hunts and possibly would have refreshed Mr. Seegar's recollection as to the time of the antelope hunts. However, these records had been destroyed by Mr. Livingston prior to the trial of this case, having served the purpose for which he kept them.↩
7. Sec. 1.274-2(c), Income Tax Regs., provides in part as follows: (c) Directly related entertainment--(1) In general. Except as otherwise provided in paragraph (d) of this section (relating to associated entertainment) or under paragraph (f) of this section (relating to business meals and other specific exceptions), no deduction shall be allowed for any expenditure for entertainment unless the taxpayer establishes that the expenditure was directly related to the active conduct of his trade or business within the meaning of this paragraph. (2) Directly related entertainment defined. Any expenditure for entertainment, if it is otherwise allowable as a deduction under chapter 1 of the Code, shall be considered directly related to the active conduct of the taxpayer's trade or business if it meets the requirements of any one of subparagraphs (3), (4), (5), or (6) of this paragraph.
(3) Directly related in general. Except as provided in subparagraph (7) of this paragraph, an expenditure for entertainment shall be considered directly related to the active conduct of the taxpayer's trade or business if it is established that it meets all of the requirements of subdivisions (i), (ii), (iii) and (iv) of this subparagraph. (i) At the time the taxpayer made the entertainment expenditure (or committed himself to make the expenditure), the taxpayer had more than a general expectation of deriving some income or other specific trade or business benefit (other than the goodwill of the person or persons entertained) at some indefinite future time from the making of the expenditure. A taxpayer, however, shall not be required to show that income or other business benefit actually resulted from each and every expenditure for which a deduction is claimed. (ii) During the entertainment period to which the expenditure related, the taxpayer actively engaged in a business meeting, negotiation, discussion, or other bona fide business transaction, other than entertainment, for the purpose of obtaining such income or other specific trade or business benefit (or, at the time the taxpayer made the expenditure or committed himself to the expenditure, it was reasonable for the taxpayer to expect that he would have done so, although such was not the case solely for reasons beyond the taxpayer's control).
* * *
(4) Expenditures in clear business setting. An expenditure for entertainment shall be considered directly related to the active conduct of the taxpayer's trade or business if it is established that the expenditure was for entertainment occurring in a clear business setting dirctly in furtherance of the taxpayer's trade or business. Generally, entertainment shall not be considered to have occurred in a clear business setting unless the taxpayer clearly establishes that any recipient of the entertainment would have reasonably known that the taxpayer had no significant motive, in incurring the expenditure, other than directly furthering his trade or business. Objective rather than subjective standards will be determinative. * * * (5) Expenditures for services performed. An expenditure shall be considered directly related to the active conduct of the taxpayer's trade or business if it is established that the expenditure was made directly or indirectly by the taxpayer for the benefit of an individual (other than an employee), and if such expenditure was in the nature of compensation for services rendered or was paid as a prize or award which is required to be included in gross income under section 74 and the regulations thereunder. * * * (6) Club dues, etc., allocable to business meals. An expenditure shall be considered directly related to the active conduct of the taxpayer's trade or business if it is established that the expenditure was with respect to a facility (as described in paragraph (e) of this section) used by the taxpayer for the furnishing of food or beverages under circumstances described in paragraph (f)(2)(i) of this section (relating to business meals and similar expenditures), to the extent allocable to the furnishing of such food or beverages. (7) Expenditures generally considered not directly related. Expenditures for entertainment, even if connected with the taxpayer's trade or business, will generally be considered not directly related to the active conduct of the taxpayer's trade or business, if the entertainment occurred under circumstances where there was little or no possibility of engaging in the active conduct of trade or business. The following circumstances will generally be considered circumstances where there was little or no possibility of engaging in the active conduct of a trade or business: (i) The taxpayer was not present; (ii) The districtions were substantial, * * *↩
8. Sec. 1.274-2(d), Income Tax Regs., provides in part as follows: (d) Associated entertainment--(1) In general. Except as provided in paragraph (f) of this section (relating to business meals and other specific exceptions) and subparagraph (4) of this paragraph (relating to expenditures closely connected with directly related entertainment), any expenditure for entertainment which is not directly related to the active conduct of the taxpayer's trade or business will not be allowable as a deduction unless-- (i) It was associated with the active conduct of trade or business as defined in subparagraph (2) of this paragraph, and (ii) The entertainment directly preceded or followed a substantial and bona fide business discussion as defined in subparagraph (3) of this paragraph. (2) Associated entertainment defined. Generally, any expenditure for entertainment, if it is otherwise allowable under chapter 1 of the Code, shall be considered associated with the active conduct of the taxpayer's trade or business if the taxpayer establishes that he had a clear business purpose in making the expenditure, such as to obtain new business or to encourage the continuation of an existing business relationship. However, any portion of an expenditure allocable to a person who was not closely connected with a person who engaged in the substantial and bona fide business discussion (as defined in subparagraph (3)(i) of this paragraph) shall not be considered associated with the active conduct of the taxpayer's trade or business. The portion of an expenditure allocable to the spouse of a person who engaged in the discussion will, if it is otherwise allowable under chapter 1 of the Code, be considered associated with the active conduct of the taxpayer's trade or business. (3) Directly preceding or following a substantial and bona fide business discussion defined--(i) Substantial and bona fide business discussion--(a) In general. Whether any meeting, negotiation or discussion constitutes a "substantial and bona fide business discussion" within the meaning of this section depends upon the facts and circumstances of each case. It must be established, however, that the taxpayer actively engaged in a business meeting, negotiation, discussion, or other bona fide business transaction, other than entertainment, for the purpose of obtaining income or other specific trade or business benefit. In addition, it must be established that such a business meeting, negotiation, discussion, or transaction was substantial in relation to the entertainment. This requirement will be satisfied if the principal character or sapect of the combined entertainment and business activity was the active conduct of business. However, it is not necessary that more time be devoted to business than to entertainment to meet this requirement. * * *
(ii) Directly preceding or following.↩ Entertainment which occurs on the same day as a substantial and bona fide business discussion (as defined in subdivision (i) of this subparagraph) will be considered to directly precede or follow such discussion. If the entertainment and the business discussion do not occur on the same day, the facts and circumstances of each case are to be considered, including the place, date and duration of the business discussion, whether the taxpayer or his business associates are from out of town, and, if so, the date of arrival and departure, and the reasons the entertainment did not take place on the day of the business discussion. For example, if a group of business associates come from out of town to the taxpayer's place of business to hold a substantial business discussion, the entertainment of such business guests and their wives on the evening prior to, or on the evening of the day following, the business discussion would generally be regarded as directly preceding or following such discussion.